WO                                                                                               MGD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Richard Johnson,                              No. CV 18-02253-PHX-MTL (MHB)

    Plaintiff,

v.                                            **ORDER**

Corizon Health Services LLC, et al.,

    Defendants.

Plaintiff Richard Johnson, who is currently confined in Arizona State Prison Complex-Phoenix, brought this pro se civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendants move for summary judgment, and Plaintiff opposes.[1] (Docs. 35, 45.)

The Court will grant the Motion and terminate this action.

## I.  Background

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment medical care claim and directed Defendants Corizon Health Services LLC ("Corizon") and Nurse Practitioners Bass and Ende to answer. The Court dismissed the remaining Defendant. (Doc. 9.)

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 37.)

1 Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III. Facts**

On May 23, 2015, while in jail, Plaintiff attempted to commit suicide by hanging, and he suffered significant damage to his spine. (Doc. 45 (Pl.'s Statement of Facts) ¶ 1.) Plaintiff had surgery and medical grade hardware was fused to his spine to hold it together.

(*Id.*)  After his surgery and while at the jail, Plaintiff was prescribed Gabapentin 1600 mg twice daily for pain.[2]  (*Id.* ¶ 3.)

On March 21, 2016, Plaintiff arrived at the Arizona Department of Corrections (ADC), and Corizon staff at the prison initially prescribed a "therapeutic dose" of Gabapentin 1600 mg twice daily.  (*Id.*)  Plaintiff saw Nurse Winfunkle and discussed the chronic pain in his back and legs and numbness/tingling in his extremities; Winfunkle noted that Plaintiff used a cane/walker for short distances and a wheelchair for longer distances.  (Doc. 36 (Defs.' Statement of Facts) at 1 ¶ 1.)  Plaintiff's prescription for Gabapentin 1600 mg twice daily was set to expire April 21, 2016.  (*Id.*)

On April 7, 2016, Plaintiff requested that his Gabapentin be renewed, and he was referred to the provider.  (*Id.* ¶ 2.)  On April 20, 2016, Plaintiff saw Dr. Musial, who noted Plaintiff's complaint of chronic pain and "L1-L5 fracture and T12 with radiculopathy and bed bound."  (*Id.* at 14.)  Dr. Musial observed that Plaintiff was in a wheelchair, had weakness in his lower extremities, especially in the right lower leg, and his pain management was at level 6 on medication.  (*Id.* at 14, 16.)  Dr. Muzial entered an order for Gabapentin 1600 mg twice daily; the prescription was set to expire on July 19, 2016.  (*Id.* at 17.)

Defendants assert that Plaintiff saw Defendant NP Ende on May 16, 2016, at which time Ende changed Plaintiff's Gabapentin prescription to 800 mg.  (Doc. 36 at 2 ¶ 3, citing Ex. C.)  Defendants' Exhibit C contains the medical records from Plaintiff's April 7 and April 20, 2016 visits, and the Court did not locate a medical record from May 16, 2016.  Nevertheless, Plaintiff confirms in his response that on May 16, 2016, Ende reduced his dosage of Gabapentin, but he says it was to 900 mg twice daily.  (*See* Doc. 45 ¶ 4.)

Plaintiff saw Defendant Ende again on July 19, 2016, and Ende submitted a consultation request for Plaintiff to go to an off-site pain clinic.  (Doc. 36 at 21, 27.)  Ende

---

[2] Gabapentin is an anticonvulsant that is used to hep control partial seizures, postherpetic neuralgia, and to relieve pain for certain nervous system conditions.  Mayo Clinic, *Gabapentin (Oral Route), available at* https://www.mayoclinic.org/drugs-supplements/gabapentin-oral-route/description/drg-20064011 (last visited Feb. 19, 2020).

ordered Acetaminophen 300 mg/Codeine Phosphate 30 mg (Tylenol #3) twice daily and Gabapentin 900 mg twice daily.[3] (*Id*. at 26-27.)

Plaintiff saw Defendant Ende again on August 15, 2016 to follow-up on Plaintiff's pain complaints and other issues. (*Id*. at 37.) Plaintiff had active prescriptions for Gabapentin 900 mg twice daily until November 16, 2016 and Ibuprofen 600 mg 3 times daily until January 25, 2017, and he renewed Plaintiff's Tylenol #3 prescription until September 14, 2016. (*Id*. at 40.)

On September 20, 2019, Plaintiff saw Dr. Brian Page at Advanced Pain Management where he was diagnosed with lumbar radiculopathy. (*Id*. at 33.) An epidurography showed a lumbar disc bulge. (*Id*.) Plaintiff was given an epidural steroid injection and told to return in 4 weeks for a second epidural injection. (*Id*. at 35.) Dr. Page recommended switching from Tylenol #3 to Morphine Sulfate 15 mg every 12 hours. (*Id*.)

On October 18, 2016, Plaintiff saw Dr. Itoro Elijah in the prison Chronic Care Clinic. (*Id*. at 44.) Dr. Elijah noted that Plaintiff was taking Gabapentin and Tylenol #3 and had received an epidural injection at the pain clinic and was due for another one; she also noted that he cannot take Tramadol because he breaks out in rash/hives. (*Id*. at 45.) At the time, Plaintiff had active prescriptions for 900 mg Gabapentin twice daily, Tylenol #3, 2 tabs twice daily, and Ibuprofen 600 mg 3 times daily. (*Id*. at 50.) Dr. Elijah ordered labs and noted that they would discuss increasing the Gabapentin to 1200 mg twice daily at the next visit. (*Id*. at 51-52.)

On November 23, 2016, Plaintiff saw RN LaToya Boyce, and Plaintiff requested an increase in his Gabapentin and asked to go to the pain clinic for injections. (*Id*. at 56.) Plaintiff had active prescriptions for Gabapentin 900 mg twice daily, Tylenol #3, 2 tabs twice daily, and Ibuprofen 600 mg 3 times daily. (*Id*. at 59.) Dr. Elijah requested that Plaintiff return to the pain clinic for a second injection to the lumbar area. (*Id*. at 61.)

---

[3] Defendants assert that at this appointment Ende prescribed Morphine 15 mg for pain but that is not reflected in the record cited. (Doc. 36 at 2 ¶ 4, citing Ex. D (Doc. 36 at 21-29).) Also, Plaintiff had active prescriptions for other medications that do not appear to be related to Plaintiff's pain condition, and the Court will not set forth those other prescriptions.

On January 10, 2017, Plaintiff saw Dr. Page at the pain clinic and received a second lumbar epidural injection; Dr. Page told Plaintiff to follow up in 4 weeks for another injection. (*Id*. at 63.)

On January 11, 2017, Dr. Elijah prescribed Morphine Sulfate 15 mg twice daily. (*Id*. at 72.)

On March 7, 2017, Plaintiff saw Dr. Page at the pain clinic; Dr. Page noted 40% relief from the first two injections. (*Id*. at 76.) Plaintiff received a third epidural injection, and Dr. Page wrote that Plaintiff was to follow up as needed. (*Id*.) Dr. Page also recommended a surgical consultation about removing the hardware in Plaintiff's back. (*Id*. at 79.)

On March 17, 2017, Plaintiff filed a Health Needs Request (HNR) requesting that his Morphine, wheelchair, and lower bunk orders be renewed. (*Id*. at 87.) At the time, Plaintiff had active drug prescriptions for Morphine Sulfate ER TB 12/15 mg twice daily, Gabapentin 900 mg twice daily, and Ibuprofen 600 mg 3 times daily as needed. (*Id*. at 92-93.) Dr. Elijah ordered that Plaintiff receive one last dose of Morphine before starting Tylenol #3 twice daily for 30 days. (*Id*. at 94.) Plaintiff's Special Needs Orders (SNO) for a lower bunk and wheelchair were renewed. (*Id*. at 98-99.)

On April 4, 2017, Plaintiff was seen by Spine Specialist Dr. Waldrip for an evaluation. (*Id*. at 101.) Dr. Waldrip planned to give Plaintiff steroid injections, to follow up in one month, and prescribed Neurontin (Gabapentin) 600 mg twice daily and Norco 10/325 as needed for pain.[4] (*Id*. at 101, 103.)

On May 18, 2017, Plaintiff saw Dr. Elijah, and Plaintiff asked about restarting Morphine instead of Tylenol #3, which he said was not helping as much. (*Id*. at 105.) Dr. Elijah discontinued Plaintiff's Tylenol #3 and restarted Morphine. (*Id*. at 109.) Plaintiff's

---

[4] It appears that Dr. Waldrip prescribed 2 tablets of Neurontin 600 mg twice daily, or 1200 mg twice daily, but that is not clear. (*See* Doc. 36 at 103.) Also, Norco is a band name for a combination of Hydrocodone and Acetaminophen. Mayo Clinic, *Hydrocodone and Acetaminophen (Oral Route)*, at https://www.mayoclinic.org /drugs-supplements/ hydrocodone-and-acetaminophen-oral-route/description/drg-20074089 (last visited Feb. 19, 2020). The record does not indicate that Plaintiff ever received Norco.

Morphine was renewed on June 21, July 21, and August 20, 2017. (*Id*. at 115, 121, 127.) The last Morphine prescription was written to expire on September 18, 2017. (*Id*. at 127.)

On September 21, 2017, Defendant Ende saw Plaintiff in the Chronic Care Clinic. (*Id*. at 130.) Ende discontinued Plaintiff's Morphine. (*Id*. at 4 ¶ 13.) Plaintiff had active prescriptions for Ibuprofen 600 mg 3 times daily as needed and Gabapentin 1200 mg twice daily, and Ende prescribed Tylenol #3, 2 tabs twice daily. (*Id*. at 136.)

On December 29, 2017, Plaintiff saw Defendant Ende for follow-up care; Plaintiff requested Tramadol, and Ende noted "long history of narcotics" and that "Tramadol allergy enter[ed] in error has been corrected." (*Id*. at 140.) Plaintiff had active prescriptions for Ibuprofen 600 mg 3 times daily and Gabapentin 1200 mg twice daily. (*Id*. at 143.) Ende ordered Tramadol 50 mg twice daily.[5] (*Id*. at 144.)

On February 4, 2018, Defendant NP Bass reviewed Plaintiff's chart and Plaintiff's request to re-start Tramadol.[6] (*Id*. at 148.) The request was "[r]efused" with a notation of "No role for long-term opio[i]ds in chronic pain." (*Id*.) Plaintiff had active prescriptions for Gabapentin 1200 mg twice daily and Ibuprofen 600 mg 3 times daily. (*Id*. at 151.)

On February 18, 2018, Plaintiff filed an HNR stating that his back was killing him and asking to return to the pain clinic for an injection. (*Id*. at 155.) There is no indication in the record of what happened to this request.

Plaintiff's medical record indicates that on April 9, 2018, Plaintiff told a nurse at sick call that he has nerve pains and would like his dose of Gabapentin "raised to the previous dose that worked best." (*Id*. at 157.)

A urine test for narcotics taken on June 8, 2018 showed Plaintiff tested positive for opiates and amphetamines. (*Id*. at 171.)

---

[5] Tramadol is an opioid analgesic that is used to relieve moderate to moderately severe pain. Mayo Clinic, *Tramadol (Oral Route)*, *available at* https://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description/drg-20068050 (last visited Feb. 19, 2019).

[6] There is no record showing that Plaintiff received Tramadol after Ende prescribed it on December 29, 2017 and, if he did receive Tramadol, when it was stopped.

Plaintiff's Gabapentin 1200 mg twice daily was reordered on September 14, 2018, January 28, 2019 and May 18, 2019. (Doc. 36 at 5 ¶ 19; Doc. 36 at 178, 183, 189.)

## IV. Eighth Amendment Legal Standard

To support a medical care claim under the Eighth Amendment, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective standard. First, a prisoner must show a "serious medical need." *Id.* (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Examples of indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Prison officials are

deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" *Wood*, 900 F.2d at 1334 (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). Deliberate indifference may also be shown where prison officials fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096.

Even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

**V. Discussion**

**A. Serious Medical Need**

The parties do not dispute that Plaintiff had a serious medical need. The record reflects that Plaintiff suffered a spinal injury and pain as a result, for which he was treated both by prison providers and by outside specialists. This record supports that Plaintiff had a serious medical need. The analysis therefore turns to the deliberate-indifference prong.

**B. Deliberate Indifference**

**1. Defendant Bass**

Plaintiff alleges in his Complaint that on February 4, 2018, Defendant Bass "denied [Plaintiff's] pain meds after having them for majority of 3 yrs." (Doc. 1 at 4.)

The only evidence in the record regarding Defendant Bass is that he performed a chart review on February 4, 2018, noted Plaintiff's request to have Tramadol re-started, and wrote there is "[n]o role for long-term opio[i]ds in chronic pain." (Doc. 36 at 148.) At that time, Plaintiff had active prescriptions for Gabapentin 1200 mg twice daily and Ibuprofen 600 mg 3 times daily. (*Id*. at 151.)

Defendants argue that this isolated incident does not rise to the level of an Eighth Amendment violation. (Doc. 35 at 9.) Plaintiff does not make any specific argument regarding Bass but argues generally that he "does not allege a mere isolated episode of

inadvertence, but persistent conduct in the face of resultant pain and risk of harm of irreparable injury." (Doc. 44 at 8.)

Absent additional facts, this chart review by Bass was an isolated incident. For an isolated incident to rise to deliberate indifference, it must be egregious in nature. *See McGuckin*, 974 F.2d at 1060-61 (repeated failure to properly treat a prisoner or a single failure that is egregious strongly suggests deliberate indifference); *Wood*, 900 F.2d at 1334 ("[i]n determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect"). "[T]he more serious the medical needs of the prisoner, and the more unwarranted the defendant's action in light of those needs, the more likely it is that a plaintiff has established 'deliberate indifference' on the part of the defendant." *McGuckin*, 974 F.2d at 1061. Here, there is no evidence that Bass's actions of denying Tramadol when Plaintiff was already receiving two other prescribed pain medications was egregious or rose to the level of deliberate indifference to Plaintiff's serious medical need.

Based on this record, there is no genuine issue of material fact that Bass violated Plaintiff's Eighth Amendment right to proper medical care, and the Court will grant summary judgment to Defendant Bass.

**2.     Defendant Ende**

Plaintiff alleges in his Complaint that after he broke his back, he was prescribed Gabapentin 1600 mg twice daily and Morphine 15 mg twice daily, but in 2016 Defendant Ende "for no medical reason reduced my Gabapentin to 900 mg 2 [times] per day. Thus leaving me in severe acute pain. Then for no reason N.P. Ende in July 2017 failed to renew my Morphine for pain" without weaning him off the medication. (Doc. 1 at 3.) Plaintiff alleges that his Gabapentin was eventually increased to 1200 mg in June 2017, but that is not enough to alleviate the severe nerve pain. (*Id.*)

Defendants argue that Defendant Ende provided Plaintiff with appropriate medical care for his spinal injury pain, prescribing and renewing various medications including Gabapentin, Tylenol, Codeine, and Morphine. (Doc. 35 at 10.) They further contend that

while Ende did in fact reduce the dosage for Plaintiff's Gabapentin, there was not a time when Plaintiff was not receiving pain medication for his spinal injury, and "[a] mere dosage reduction, for a limited time, is insufficient to state a claim for deliberate indifference, especially where there is no evidence of harm from the delay." (*Id.* at 10-11.)

Plaintiff does not specifically address Ende in his Response except to assert that Ende "ignor[ed] the past medical providers orders of Gabapentin" and, on May 16, 2016, "cut the therapeutic dosage of Gabapentin to an un-therapeutic dosage of 900 mg twice daily." (Doc. 44 at 3.)

Although Plaintiff clearly disagrees with the care he received from Ende and appears to argue that he should have been kept on Gabapentin 1600 mg twice daily indefinitely, Plaintiff introduces no evidence demonstrating that anyone had recommended that Plaintiff take 1600 mg Gabapentin twice daily indefinitely or that Ende's decisions were deliberately indifferent to his serious medical needs. While Ende did reduce Plaintiff's Gabapentin dosage to 900 mg twice daily on May 16, 2016, he added Tylenol #3 to Plaintiff's pain medications on July 19, 2016 and renewed those medications on August 15, 2016. When Plaintiff saw Dr. Elijah on October 18, 2016, Dr. Elijah maintained the prescriptions of Gabapentin 900 mg twice daily and Tylenol #3, and a month later, prescribed Morphine. On March 17, 2017, Dr. Elijah ordered that Plaintiff could receive one last dose of Morphine and then to switch to Tylenol #3. At Plaintiff's April 4, 2017 appointment with the spine specialist, Dr. Waldrip, Dr. Waldrip planned for spinal injections and wrote a prescription for Gabapentin 600 mg (possibly 2 tablets) twice daily. On May 18, 2017, Dr. Elijah discontinued Plaintiff's Tylenol #3 at Plaintiff's request and restarted Morphine, with the final Morphine prescription set to expire on September 18, 2017. On September 21, 2017, Ende discontinued Morphine and prescribed Tylenol #3 as well as Gabapentin 1200 mg twice daily. There is no evidence that discontinuing or reducing the dosage of a medication in favor of trying different pain medications disregarded a significant risk to Plaintiff's health. Although Plaintiff would have preferred to remain on Gabapentin 1600 mg twice daily, there is no evidence that Ende's decision to

1  reduce the dosage was medically improper. Even the specialist, Dr. Waldrip, did not
2  prescribe Gabapentin 1600 mg twice daily, but instead prescribed either 600 or 1200 mg
3  twice daily. Based on this record, there is no genuine issue of material fact that Ende's
4  reduction of Gabapentin in lieu of other medications violated Plaintiff's Eighth
5  Amendment rights, and the Court will grant summary judgment to Defendant Ende.

### 3. **Defendant Corizon**

Plaintiff alleges in his Complaint that "[m]edical has not addressed my need for pain management" and that starting and stopping medications and injections for pain forces him to rely on his wheelchair, which is causing his muscles to atrophy because the pain is unbearable. (Doc. 1 at 3-4.) Plaintiff further alleges that Corizon has not followed through on the surgeon's recommendation for physical therapy because "it is too costly and Corizon won't spend the money." (*Id*. at 5.)

To support a § 1983 claim against a private entity performing a traditional public function, such as providing medical care to prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012) (extending the "official policy" requirement for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), to private entities acting under color of law). Under *Monell*, a plaintiff must show: (1) he suffered a constitutional injury; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional injury. *See Monell*, 436 U.S. at 691-94; *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

Here, the record does not show that Plaintiff suffered a constitutional injury. A review of Plaintiff's medical records shows that Plaintiff's complaints of pain were consistently addressed by Corizon medical staff and outside specialists. Plaintiff has not presented any facts to refute the evidence in his medical records or to show that the medical

treatment he received for his pain was medically inappropriate and amounted to deliberate indifference. As to Plaintiff's allegation that Corizon denied him physical therapy, there is no evidence in the record regarding this recommendation or that Plaintiff ever submitted requests for physical therapy and was denied. As such, Plaintiff's vague allegation of a recommendation for physical therapy is insufficient to create a genuine issue of material fact that his Eighth Amendment rights were violated. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment"); *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) ("a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

Based on this record, Plaintiff has failed to satisfy the first prong of the *Monell* test, and his claim against Corizon fails as a matter of law. Accordingly, the Court will grant summary judgment to Corizon.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 35).

(2) Defendants' Motion for Summary Judgment (Doc. 35) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 20th day of February, 2020.

Michael T. Liburdi
United States District Judge